UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WENDI R. MORSE and FELICIA KAY PENNINGTON individually and on behalf of others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CAUSE NO: 1:08-cv-1389 WTL-JMS ) |
| MER CORPORATION d/b/a DANCERS SHOWCLUB, | ) ) ) |
| Defendant. | ) ) |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.       INTRODUCTION

Plaintiffs Wendi R. Morse and Felicia Kay Pennington (together, "Plaintiffs") represent a class composed of women who were employed by MER Corporation as Entertainers and worked at Dancers Showclub in Indianapolis ("Defendant"). The career path of an Entertainer at Defendant begins with an audition at which the club's managers evaluate an individual's appeal as an Entertainer. There are no established criteria for what makes one a good Entertainer; the decision regarding whether an Entertainer is hired is made subjectively according to the senses of the evaluator. There are no dance skills or training required. Once an Entertainer has been hired, Defendant reviews its "Entertainer Guidelines" ("Guidelines") with each new Entertainer. The Guidelines set forth the terms and conditions of the Entertainers' employment with Defendant.

Plaintiffs' claim is based on Defendant's classification of Entertainers as independent contractors as opposed to employees. Defendant is exploiting the advantages to an employer of the independent contractor classification while not bestowing the benefits of that classification

1

upon Plaintiffs. In other words, Defendant is treating Plaintiffs like employees, yet not providing the benefits of employment that the law requires.

As set forth below, the reality of Defendant's relationship with its Entertainers belies the independent contractor classification. Upon considering the amount of control Defendant exercises over Entertainers, the parties' potential for profit and loss, the centrality of Entertainers to Defendant's business, the economic dependence of Defendant on Entertainers, the parties' relative investments in the venture, and the low amount of skill and initiative required of Entertainers, it is clear that Entertainers are independent contractors in name only and, in reality, are Defendant's employees. Thus, Plaintiffs are entitled to coverage by the Fair Labor Standards Act ("FLSA") and Defendant violated the FLSA by not providing the benefits of the FLSA to Plaintiffs. Therefore, Plaintiffs respectfully request that summary judgment be granted in their favor and against Defendant on their claim that Defendant violated their rights under the FLSA.

## II.    STATEMENT OF FACTS NOT IN DISPUTE

Defendant classifies Entertainers as independent contractors. [Defendant's Answer and Affirmative Defenses, Docket Entry No. 14, ¶13] Defendant does not pay its Entertainers any wages or other compensation. [Defendant's Answer and Affirmative Defenses, Docket Entry No. 14, ¶14] In order for an Entertainer to begin working at Defendant's club, she must go to the club, complete an "Audition Application," provide sufficient identification, and complete an audition which consists of dancing for two or three songs. [James Bradley Nicholson Dep., pg. 29, ln. 12 – pg. 30, ln. 23; pg 31, ln. 9 – pg. 33, ln. 22; James Bradley Nicholson Dep., Exhibit 1] Defendant does not require Entertainers to have any special skills or training. [Stephen D. Nicholson Dep., pg. 13, lns. 5-19; James Bradley Nicholson Dep., pg. 36, ln. 16 – pg. 37, ln. 12] When an Entertainer passes their audition, Defendant reviews the applicable version of the

Guidelines with the Entertainer and provides the Entertainer with a copy of said Guidelines. [James Bradley Nicholson Dep., pg. 39, ln. 12 – pg. 40, ln. 12; pg. 51, lns. 1-10; pg. 55, ln. 6 – pg. 56, ln. 3]

Entertainers are required to pay a "House Fee" for each shift, which varies in amount from $0.00 - $30.00 based on when the Entertainer's shift starts. [Defendant's Answer and Affirmative Defenses, Docket Entry No. 14, ¶20; Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3] An Entertainer's failure to pay the "House Fee" could result in her being disciplined by Defendant. [James Bradley Nicholson Dep., pg. 67, lns. 9-25] Entertainers are not required to pay the "House Fee" up front at the beginning of a shift; usually the "House Fee" is paid throughout the night as the Entertainers collect tips from customers, and in some cases the "House Fee" is held over until the next shift. [James Bradley Nicholson Dep., pg. 24, ln. 20 – pg. 25, ln. 6] Other than forfeiture of the "House Fee" for their shift, Entertainers are not exposed to risk of loss. [James Bradley Nicholson Dep., pg. 25, lns. 7-16]

Entertainers are required to charge a minimum of $20.00 per VIP dance. [James Bradley Nicholson Dep., pg. 59, ln. 16 – pg. 60, ln. 1; Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3] Entertainers who fail to charge $20.00 for VIP dances are potentially subject to discipline. [James Bradley Nicholson Dep., pg. 66, ln. 23 – pg. 67, ln. 4] When using the "Goodfellas" room, also known as the "champagne room," Defendant collects $325.00 per hour from customers and disburses $250.00 of that fee to the Entertainer, while keeping $75.00 for itself. [James Bradley Nicholson Dep., pg. 60, lns. 10-25; Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3]

Entertainers at Defendant's club are required to perform "stage dances" in a set rotation. [James Bradley Nicholson Dep., pg. 28, lns. 14-25] Entertainers are required to be topless by the

3

end of a stage dance set. [Stephen D. Nicholson Dep., pg 33, ln. 11 – pg. 34, ln. 12; Stephen D. Nicholson Dep., Exhibit 5] Entertainers are required to work a minimum of six (6) hours per shift unless Defendant allows for an exception to the rule, such as by granting a request from an Entertainer that she be allowed to leave prior to six (6) hour shift minimum. [James Bradley Nicholson Dep., pg. 61, lns. 11-24; Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3; Defendant's Answer to Plaintiffs' Interrogatory No. 14, pg. 6] Entertainers are subject to discipline if they do not receive permission to leave their shifts before meeting the six-hour requirement. [James Bradley Nicholson Dep., pg. 61, ln. 21 – pg. 62, ln. 13]

Entertainers are prohibited from patronizing Defendant's club on nights when they are not working unless they receive permission to do so from a manager. [James Bradley Nicholson Dep., pg. 63, ln. 25 – pg. 64, ln. 6; Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3] Entertainers are not permitted to have their friends, family members, and significant others visit and/or patronize them while they are working at Defendant's club. [Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3] Stephen D. Nicholson, one of Defendant's managers, informed Entertainers that they were not permitted to dance at other night clubs. [Wendi Morse Dep., pg. 76, lns. 9-21; Stephen D. Nicholson Dep., pg 5, lns. 6-11]

Defendant forbids Entertainers from wearing "street clothes," such as tennis shoes, sandals, flip-flops, and blue jeans, while working. [James Bradley Nicholson Dep., pg.76, lns. 1-10; Stephen D. Nicholson Dep., pg. 46, ln. 22 – pg. 48, ln. 20] Entertainers are not free to get as many tattoos as they wish. [Stephen D. Nicholson Dep., pg. 17, lns. 17-19] Entertainers are not allowed to have cell phones on the floor, chew gum, walk with lit cigarettes, or drink from

4

bottles. [Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3] Entertainers can make requests to the DJ about what music she would like the club to play, however, the music selection in the club is controlled by the DJ and the managers. [Stephen D. Nicholson Dep., pg. 45, ln. 20 – pg. 46, ln. 14]

Defendant is dependent upon Entertainers in order to conduct its business according to its present business model. [Stephen D. Nicholson Dep., pg. 9, ln. 13 – pg. 10, ln. 6; James Bradley Nicholson Dep., pg. 27, ln. 25 – pg. 28, ln. 6] Customers of Defendant rarely visit the club for the exclusive purpose of obtaining food and drink. [James Bradley Nicholson Dep., pg. 27, lns. 16-20] Defendant bears the exclusive risk of loss and opportunity for profit related to carrying on its food and beverage service business, including liability arising from conduct of those portions of Defendant's business operations. [James Bradley Nicholson Dep., pg. 17, ln. 9 – pg. 18, ln. 25] Losses suffered from spoilage of food are solely borne by Defendant and Defendant bears the sole risk of loss resulting from overhead costs in excess of Defendant's revenues. [James Bradley Nicholson Dep., pg. 17, ln. 9 – pg. 18, ln. 19]

Entertainers do not make any capital investment in Defendant's facilities, advertising, maintenance, security, staff, sound system and lights, food, beverage, and other inventory. [Defendant's Answer and Affirmative Defenses, Docket Entry No. 14, ¶21; Defendant's Answer to Plaintiffs' Interrogatory No. 9, pgs. 3-4] Defendant is responsible for maintenance of its facility, inventory, and obtaining all appropriate business insurance and licensing and bears any liability associated therewith. [James Bradley Nicholson Dep., pg. 18, ln. 20 – pg. 19, ln. 20; Defendant's Answer and Affirmative Defenses, Docket Entry No. 14, ¶23; Defendant's Answer to Plaintiffs' Interrogatory No. 9, pgs. 3-4]

An Entertainer's only opportunity to increase her earnings is by taking care of herself, working harder, and enticing social interaction with customers. [James Bradley Nicholson Dep., pg. 22, ln. 20 – pg. 24, ln. 3] Entertainers are not permitted to sub-contract other qualified individuals to perform their duties at Defendant's club. [Defendant's Answer and Affirmative Defenses, Docket Entry No. 14, ¶22]

### III.  SUMMARY JUDGMENT STANDARD

When the record clearly shows that "there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law," summary judgment is appropriate for the Court to grant. Fed. R. Civ. P. 56(c); Indiana Funeral Directors Ins. Trust v. Trustmark Ins. Corp., 347 F.3d 652, 654 (7th Cir. 2003). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); DeLuca v. Winer Industries, Inc., 53 F.3d 793, 796 (7th Cir. 1995).

Once the moving party has demonstrated that no genuine issue of material fact exists, the non-moving party must show, by specific, factual allegations, the existence of such an issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The issue on summary judgment "is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue." Medina v. Time Ins. Co., 3 F.Supp.2d 996, 997 (S.D.Ind. 1998); Holtz v. Hilliard, 1 F.Supp.2d 887, 889-90 (S.D.Ind. 1998). "The opposing party, however, must do more than create a mere 'colorable' factual dispute to defeat summary judgment; disputed facts must be material - i.e., outcome determinative." Lloyd v. Bridgeport Brass Corp., 811 F.Supp. 401, 404 (S.D. Ind. 1993). When considering a motion for summary judgment, the

6

Court's task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994); see also Osbun v. Auburn Foundry, Inc., 293 F.Supp.2d 863, 867 (N.D.Ind. 2003).

## IV.   ARGUMENT

### A.   Entertainers Are Employees, Not Independent Contractors.

In order to accomplish the remedial purposes at the heart of the FLSA, the Act contains broad definitions of what constitutes covered employment. Secretary of Labor, U.S. Dept. of Labor v. Lauritzen, 835 F.2d 1529, 1534 (7th Cir. 1987). This has resulted in abandonment of the common law concepts of employees and independent contractors to determine the FLSA's limits in favor of the "economic reality" of the relationship between two parties. Id. The FLSA "contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category." Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947) quoting Walling v. Portland Terminal Co., 330 U.S. 148, 150-51 (1947).

In analyzing these situations, Courts "do not look to a particular isolated factor but to all the circumstances of the work activity." Lauritzen, 835 F.2d 1529 citing Rutherford, 331 U.S. at 730. For example, while employers and employees may use many different names to characterize their relationships, "[w]here the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the work from the protection of the [Fair Labor Standards] Act." Rutherford, 331 U.S. at 729.

The Seventh Circuit has recognized a six-factor test for assessing the "economic reality" of a relationship and determining whether an individual is an independent contractor or an employee. Estate of Suskovich v. Anthem Health Plans Of Virginia, Inc., 553 F.3d 559, 565 (7th

Cir. 2009) ("FLSA cases . . . are decided utilizing a broader definition of employee than the common law, and determine whether an arrangement is an employment or independent contractor relationship with a six-factor test to determine the 'economic reality' of the situation"). The factors are: "(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employer's business. Lauritzen, 835 F.2d at 1534-1535. The Court must examine the factors as a whole because "no criterion is by itself, or by its absence, dispositive or controlling." Id at 1534. The question of whether a worker is an employee or an independent contractor is a matter of law, not of fact. Id at 1535.

In the case at bar, an examination of these six factors and the undisputed evidence reveals the existence of an employment relationship between Defendant and Plaintiffs.

> i. The nature and degree of Defendant's control as to the manner in which the work is to be performed.

Although Defendant classifies Entertainers as independent contractors free to set their own terms and conditions of employment, it simply cannot be disputed that Entertainers, in fact, do not possess such freedom. To the contrary, the undisputed facts demonstrate that Entertainers are subject to a broad range of control by Defendant when it comes to the manner in which their work is performed. At the time Defendant hires an Entertainer, she is given the club's Guidelines which lay out a host of rules and policies applicable to Entertainers. [James Bradley Nicholson Dep., pg. 39, ln. 12 – pg. 40, ln. 12; pg. 51, lns. 1-10; pg. 55, ln. 6 – pg. 56, ln. 3]

8

These Guidelines contain, amongst other things: a minimum number of hours the Entertainer must work per shift, a ban on walking with a lit cigarettes, a prohibition on chewing gum, a ban on consuming bottled drinks, forbid the use of cell phones while "on the floor," a prohibition on Entertainers entering the club on nights they are not working, and a prohibition on allowing friends, family members, or significant of Entertainers to enter the club while the Entertainer is working. [Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3]

An examination of these Guidelines in practice further supports Plaintiffs' claim of employee status. For example, Entertainers are required to work a minimum of six (6) hours per shift unless Defendant allows for an exception to the rule, such as by granting a request from an Entertainer that she be allowed to leave prior to six (6) hour shift minimum. [James Bradley Nicholson Dep., pg. 61, lns. 11-24; Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3; Defendant's Answer to Plaintiffs' Interrogatory No. 14, pg. 6] Entertainers are subject to discipline if they do not receive permission to leave their shifts before meeting the six-hour requirement. [James Bradley Nicholson Dep., pg. 61, ln. 21 – pg. 62, ln. 13] Once they begin working, Entertainers are required to perform "stage dances" in a set rotation and are required to be topless by the end of a stage dance set. [James Bradley Nicholson Dep., pg. 28, lns. 14-25; Stephen D. Nicholson Dep., pg 33, ln 11 – pg. 34, ln 12; Stephen D. Nicholson Dep., Exhibit 5] Thus, an Entertainer is not free to work for a short period of time, work until she makes a certain amount of money, or come in and perform only a specified dance for a specific customer if she so chooses. This more closely mirrors an employee-employer relationship where the employee serves at the leisure of her employer while "on the clock" than that of an independent contractor situation where the contractor is free to utilize her independent discretion as to the manner in which the job is to be completed.

9

Similarly, Entertainers are not granted the freedom to freely negotiate with their customers as to the pricing of dances.  Defendant requires a minimum charge of $20.00 per VIP dance and $325.00 per hour for the "Goodfellas/champagne room."  [James Bradley Nicholson Dep., pg. 59, ln. 16 – pg. 60, ln. 1; pg. 60, lns. 10-25; Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3]  Entertainers who fail to charge $20.00 for VIP dances are potentially subject to discipline and Defendant collects the money directly from customers for the "Goodfellas/champagne room," thereby preventing an Entertainer from negotiating a different amount.  [James Bradley Nicholson Dep., pg. 60, lns. 10-25; pg. 66, ln. 23 – pg. 67, ln. 4]  This, once again, more closely mirrors an employee-employer relationship where the employer sets and regulates the prices charged by the enterprise as opposed to that of an independent contractor relationship where the contractor has the ability to negotiate the price they charge for a particular project or service.

Another similar exercise of control over the manner in which the work is performed comes in the form of Defendant's refusal to allow Entertainers to sub-contract other qualified individuals to perform their duties at Defendant's club.  [See Defendant's Answer and Affirmative Defenses, Docket Entry No. 14, ¶22]  Many independent contractor arrangements are typified by the principle that one is hiring the independent contractor to ensure that a certain job is performed.  For example, someone who hires a lawn service to mow their lawn or a roofer to repair hail damage is engaging an independent contractor for the purpose of making sure a task is performed – the lawn in mowed or the roof in repaired.  Whether that independent contractor mows the lawn themselves or utilizes a friend to do so is of no moment to the individual who hired the contractor because the contractor fulfilled the terms of the agreement by ensuring that the work was performed.  Here, Defendant does not allow the "independent

contractor" Entertainers similar freedoms to control the manner in which the work is performed. In so doing, Defendant is undermining its classification of Entertainers as independent contractors.

Further evidence of the high degree of control Defendant exercises over the manner in which Entertainers perform their work comes in the form of all of the rules and regulations Defendant places upon the Entertainers once their workday begins.  By its own admission, Defendant forbids Entertainers from wearing "street clothes," such as tennis shoes, sandals, flip-flops, and blue jeans, while working. [James Bradley Nicholson Dep., pg.76, lns. 1-10; Stephen D. Nicholson Dep., pg. 46, ln. 22 – pg. 48, ln. 20]  Entertainers are not allowed to have cell phones on the floor, chew gum, walk with lit cigarettes, or drink from bottles. [Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3]  Defendant, and not the Entertainer herself, controls the music played in the club while the Entertainer is performing. [Stephen D. Nicholson Dep., pg. 45, ln. 20 – pg. 46, ln. 14]  Entertainers are not permitted to have their friends, family members, and significant others visit and/or patronize them while they are working at Defendant's club.  [Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3]  While most of these rules are not unusual and, in fact, are typical of many workplaces, it must be remembered that those workplaces involve employee-employer relationships as opposed to independent contractor ones.

Additionally, unlike independent contractor relationships which generally only last for a specified duration and exist for a discrete purpose, Defendant continues to exercise control over the Entertainers even when the "contract" is not being performed.  For example, Defendant prohibits Entertainers from patronizing the club on nights when they are not working unless they receive permission to do so from a manager [James Bradley Nicholson Dep., pg. 63, ln. 25 – pg.

64, ln. 6; Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3]; Entertainers are not permitted to dance at other night clubs [Wendi Morse Dep., pg. 76, lns. 9-21]; and Entertainers are not free to get as many tattoos as they wish.  [Stephen D. Nicholson Dep., pg. 17, lns. 17-19]  Again, these facts belie Defendant's contention that its Entertainers have the freedom of an independent contractor.

Because the undisputed facts demonstrate that Defendant exercises broad control over the manner in which Entertainers work at its club, control that is patently inconsistent with an independent contractor classification, this factor weighs heavily in favor of employee status. Other Federal Courts who have reviewed similar cases have come to this same conclusion.  See Reich v. Circle C. Investments, Inc., 998 F.2d 324, 327 (5th Cir. 1993); Harrell v. Diamond A Entertainment, Inc., 992 F.Supp. 1343, 1348-50 (M.D.Fla. 1997); Reich v. Priba Corp., 890 F.Supp. 586, 592 (N.D.Tex. 1995).

    ii. Plaintiffs' opportunity for profit or loss depending upon their managerial skill.

Another of the hallmarks of an independent contractor, in business for herself, is that she runs the risk of loss and has the opportunity to profit from taking risks.  The undisputed facts show that Entertainers have very little financial risk, and concurrently have no opportunity for profit based on their managerial skill.

An Entertainer's only opportunity for loss comes in the form of a "House Fee" that she is required to pay for each shift, the amount of which ranges from $0.00 - $30.00. [James Bradley Nicholson Dep., pg. 25, lns. 7-16; Defendant's Answer and Affirmative Defenses, Docket Entry No. 14, ¶20; Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3]  If the "House Fee" were to exceed the Entertainer's tips for that shift, the Entertainer could lose money during that shift.  However, because Entertainers were allowed to defer house fees to a

later shift, even this risk is somewhat mitigated. [James Bradley Nicholson Dep., pg. 24, ln. 20 – pg. 25, ln. 6] All other potential risks of loss, be they food and beverage related or liability-related, are borne solely by Defendant. [James Bradley Nicholson Dep., pg. 17, ln. 9 – pg. 19, ln. 20]

An Entertainer's opportunity for profit based on managerial skill is similarly truncated. According to Defendant, an Entertainer has the opportunity to increase her earnings by taking care of herself, working harder, and enticing social interaction with her customers. [James Bradley Nicholson Dep., pg. 22, ln. 20 – pg. 24, ln. 3] In Reich v. Priba Corp., 890 F.Supp. 586 (N.D.Tex. 1995), the District Court rejected a similar argument in a case involving this same industry:

> The entertainers at Cabaret Royale do not have the opportunity to exercise the skill and initiative necessary to elevate their status to that of independent contractors. . . . Defendants argue that what a particular entertainer earns in tips is directly related to that entertainer's initiative and skill in performing. This argument, however, is true in any employment relationship: an individual can always improve her chances for greater earnings by using initiative and skill to perform to the best of her ability. Hickey accordingly considered initiative, not in the sense of performing well, but in the sense of engaging in those activities that tended to expand the sales representative's client base, goodwill, and contracting possibilities. An entertainer at the Cabaret Royale owns no enterprise. The scope of her initiative is restricted to decisions involving what clothes to wear or how provocatively to dance. Such limited initiative is more consistent with the status of an employee than an independent contractor.

Id at 593 (internal citations omitted).

In addition, the undisputed facts show that Entertainers lack the requisite power to exercise "managerial skill" in an effort to increase their chances for additional profits or even to suffer greater losses. Specifically, Defendant forbids Entertainers from marketing themselves to whomever they choose as evidenced by its prohibition on friends entering the club while the

Entertainer is working.  [See Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3]  Defendant also forbids Entertainers from wearing certain types of clothing, such as jeans, using their cell phones on the floor, charging less than $20.00 for a VIP dance, and charging less than $325.00 per hour for the "Goodfellas/champagne room."  Defendant also regulates the contact an Entertainer has with the customer and the types of tattoos an Entertainer wishes to obtain.  All of these prohibitions and regulations impinge upon the Entertainers' ability to exercise independent "managerial skill" in an effort to build their customer base, income, and profits.

Furthermore, because Defendant is exclusively responsible for capital investments and advertising for the club, Entertainers lack to ability to utilize their "managerial skill" with respect to the operation of the club and, therefore, do not possess any opportunity for increasing the profit, or loss, of the club itself, nor do Entertainers share in any profits or losses realized by the club.

> iii.     Plaintiffs' investment in equipment or materials required for their task, or their employment of workers.

Entertainers do not make any capital investment in Defendant's facilities, advertising, maintenance, security, staff, sound system and lights, food, beverage, and other inventory. [Defendant's Answer and Affirmative Defenses, Docket Entry No. 14, ¶21; Defendant's Answer to Plaintiffs' Interrogatory No. 9, pgs. 3-4]  Defendant is solely responsible for maintenance of its facility, inventory, employee salaries, and obtaining all appropriate business insurance and licensing. [Defendant's Answer and Affirmative Defenses, Docket Entry No. 14, ¶23; Defendant's Answer to Plaintiffs' Interrogatory No. 9, pgs. 3-4]  In other words, Defendant is responsible for all of the operating costs associated with the club.

Plaintiffs anticipate Defendant will argue that Plaintiffs were required to "invest" in a host of equipment and materials, such as hair, makeup, nails, and clothing.  However, the record is severely lacking as to the dollar amount of these "investments."  Furthermore, the fact that Entertainers were required to "invest" in clothing and their personal appearance does nothing to create a material issue of fact with regard to the issue of employee/independent contractor status.

First, employees in most occupations are required to "invest" in appropriate clothing for their vocation.  The mere fact that a law clerk may have to buy some suits and ties or that the individual responsible for collecting shopping carts from a parking lot may have to buy some warm clothes, gloves, and boots does not magically transform that person from an employee to an independent contractor.  Likewise, every salesperson and restaurant server who "invests" in haircuts and personal grooming in order to be more pleasing to their customers' senses is hardly rendering themselves ineligible for the protections of the FLSA.

Second, as the First Circuit found in Reich v. Circle C. Investments, Inc., 998 F.2d 324 (5th Cir. 1993):

> A dancer's investment in costumes and a padlock is relatively minor to the considerable investment Circle C has in operating a nightclub. The fact that the district court did not make specific findings regarding Circle C's investment does not detract from our analysis given the obvious significant investment Circle C has in operating a nightclub. The record does not completely identify Circle C's investment, but it does reveal that Circle C owns the liquor license, owns the inventory of beverages and refreshments, leases fixtures for the nightclub (e.g., the stage and lights), owns sound equipment and music, maintains and renovates the facilities, and advertises extensively.

Id at 328.  As noted above, a similar record exists in the case at bar with respect to Defendant's investment in its club and a similar finding should issue from this Court.

        iv.      <u>Whether the service rendered requires a special skill.</u>

Another factor demonstrating that Entertainers are employees, not independent contractors, is the meager level of skill required to perform their work. As Defendant itself concedes, there is no skill required to be an Entertainer. [Stephen D. Nicholson Dep., pg. 13, lns. 5-19; James Bradley Nicholson Dep., pg. 36, ln. 16 – pg. 37, ln. 12] Whereas independent contractors often possess a specialized skill which the principal lacks and for which it subsequently hires the independent contractor, it is undisputed that Entertainers were not required to possess any such skill.

Defendant may attempt to ignore the candid testimony of its management and argue that an Entertainer's efforts to maintain a certain appearance, work harder, and/or entice customers through social interaction is central to her ability to make money and, as a result, is an essential skill. However, an identical argument was soundly rejected in <u>Circle C.</u>, 998 F.2d 324. As the <u>Circle C.</u> Court flatly noted, "this court has concluded that the ability to develop and maintain rapport with customers is not the type of 'initiative' contemplated by this factor. . . . A dancer's initiative is essentially limited to decisions involving her costumes and dance routines. The dancers do not exhibit the skill or initiative indicative of persons in business for themselves." <u>Id</u> at 328.

        v.      <u>The degree of permanency and duration of the working relationship</u>.

While permanence of the relationship is a factor cited by the Seventh Circuit for consideration in determining employee status, many courts have declined to place any significant emphasis on this factor. <u>See</u>, <u>e.g.</u>, <u>Harrell v. Diamond A Entertainment, Inc.</u>, 992 F.Supp. 1343, 1352 (M.D.Fla. 1997) (<u>and</u> <u>cases</u> <u>cited</u> <u>therein</u>). Aside from the initial probationary period for new Entertainers referred to in Defendant's Entertainer Guidelines, nothing in the record serves

16

to prove that Entertainers were considered to be temporary employees.  [See Stephen D. Nicholson Dep., Exhibit 5; James Bradley Nicholson Dep., Exhibit 3]  In fact, the existence of the probationary period implies that, upon completing the probationary period, Defendant intends the relationship to become ongoing.

Defendant may argue that a significant portion of its Entertainers only had brief tenures with Defendant.  However, that argument would be unpersuasive.  Many food service and retail positions, such as servers, busboys, dishwashers, and clerks, often experience high turnover and short tenures.  However, one would not suggest that the brevity of a substantial percentage of those relationships indicates independent contractor status, nor should it in the case of Entertainers.  Contrasted against independent contractors, whose relationships to the principal usually last a specified period of time or until a specific task is completed and for which the duration of the relationship is often set forth in a contract or other such agreement, the position held by Entertainers has an indefinite and ongoing quality to it that materially differentiates it from the limited-duration relationship typical to independent contractors.

>vi.    The extent to which the service rendered is an integral part of Defendant's business.

"The extent to which the task performed by the alleged employee was integral to the business of the employer is a factor indicating dependence. . . . Exotic dancers are obviously essential to the success of a topless nightclub."  Id. (internal citations omitted).  Here, not even Defendant's own management can minimize the club's high level of dependence on Entertainers.  When asked what would happen to the club's business if it eliminated Entertainers, James Bradley Nicholson, the individual who oversees Defendant's operations, responded: "The same thing if McDonald's got rid of hamburgers, all right?  We wouldn't be that business."  [James Bradley Nicholson Dep., pg. 27, ln. 25 – pg. 28, ln. 1; pg. 5, ln. 3 – pg. 6, ln. 8]  It is an

17

undisputed fact that Entertainers play an indispensable role in Defendant's business and this undisputed fact provides compelling evidence in favor of Plaintiffs' claims that they are employees as defined by the FLSA.

### B. Defendant Violated the FLSA.

As employees, Plaintiffs are entitled to the protections of the FLSA. "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages . . .." 29 U.S.C. §206(a). By Defendant's own admission, it paid no wages of any kind to Plaintiffs. [Defendant's Answer and Affirmative Defenses, ¶14] As such, it is undisputed that Defendant has violated the FLSA.

### V. CONCLUSION

As demonstrated above, the factors adopted by the Seventh Circuit for determining whether an individual is an independent contractor or an employee weigh squarely in favor of Entertainers being classified as employees. Defendant exercises a broad range of controls over the conduct of Entertainers and over the method and manner in which Entertainers go about performing their job. Entertainers have limited opportunities for profit and virtually no risk of loss, are not permitted to make any investment in, or have any input regarding, the business, are not required to have any specialized skill or training, and have a very limited ability to take initiative and improve their earnings. The relationship between Defendant and Entertainers bears all the hallmarks of an ongoing one and they could hardly be more of an integral part of Defendant's business. Therefore, Defendant was required to pay wages to Plaintiffs in accordance with the FLSA. Defendant failed to do so.

Because no genuine issues of material fact exist with respect to Plaintiffs' claim that Defendant violated the rights guaranteed them by the FLSA, Plaintiffs respectfully requests that summary judgment be granted in their favor and that the Court convert the current trial setting beginning on August 23, 2010 a hearing to determine the damages to which Plaintiffs are entitled as a result of Defendant's unlawful actions.

Respectfully submitted,

/s/ Andrew G. Jones
Andrew G. Jones
Philip J. Gibbons, Jr.
GIBBONS JONES, P.C.
Two Meridian Plaza
10401 N. Meridian St., Ste. 300
Indianapolis, Indiana 46290
Telephone:   (317) 706-1100
Facsimile:   (317) 616-3337
E-mail:      ajones@gibbonsjones.com
             pgibbons@gibbonsjones.com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was been served on the 14th day of January, 2010, by way of the Court's Electronic Case Filing system upon the following counsel of record:

Richard Kammen
Dorothy Hertzel
GILROY & KAMMEN
Richard@kammenlaw.com
dorie@kammenlaw.com

/s/ Andrew G. Jones