UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WENDI R. MORSE et al., )  )  Plaintiffs, )  )  vs. )  )  MER CORPORATION d/b/a DANCERS )  SHOWCLUB, )  )  Defendant. )  ) | Cause No. 1:08-cv-1389-WTL-JMS |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment (Docket Nos. 56 & 63) as well as the Defendant's Motion for Oral Argument (Docket No. 66). The motions are fully briefed, and the Court being duly advised, now **GRANTS** the Plaintiffs' Motion for Summary Judgment, **DENIES** the Defendant's Motion for Summary Judgment, and **DENIES** the Defendant's Motion for Oral Argument.

**I.  SUMMARY JUDGMENT STANDARD**

The fact that the parties have filed cross-motions for summary judgment does not alter the standard set forth in Federal Rule of Civil Procedure 56(c)(2). When evaluating each side's motion the court simply "'construe[s] all inferences in favor of the party against whom the motion under consideration is made.'" *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

The Plaintiffs in this case were all exotic dancers at Dancers Showclub, an establishment owned and operated by the Defendant, in Indianapolis, Indiana. To be hired by the Defendant, an individual had to go to the club, complete an audition application, provide sufficient identification, and perform an audition by dancing to two or three songs. Individuals who passed their auditions and were hired by the Defendant were given a copy of the Entertainer Guidelines (Docket No. 58 Ex. 3). Many of these guidelines, such as those prohibiting the Plaintiffs from leaving with male patrons and those banning family and significant others from the club while the Plaintiffs were performing, were put in place to keep the Plaintiffs safe and to ensure that the Plaintiffs followed the law.

The Defendant classified the Plaintiffs as independent contractors. Accordingly, the Defendant never paid any of the Plaintiffs a wage or other compensation. Instead, the Plaintiffs

earned their income by collecting tips from customers.  The Defendant did not monitor the Plaintiffs' income.

None of the Plaintiffs had set work schedules.  They were free to come to work on whatever dates and times they chose.  They were also free to develop their own clientele and could generate business by advertising on the internet.  The Plaintiffs' dancing rotation was set on a first come, first served basis.  Once at work, the Defendant preferred that the Plaintiffs work at least a six-hour shift.  At some point during her shift, each Plaintiff was required to pay a House Fee to the Defendant.[1]  The House Fee was based on when a Plaintiff checked in to work.[2]

The Entertainer Guidelines suggest that the Plaintiffs pay a "tip out" to the bar and the disc jockey ("DJ") at the end of every shift.  The suggested gratuity is ten percent to the bar and five percent to the DJ.  However, this is not a requirement, and the Plaintiffs were not prohibited from working if they failed to pay the recommended tip out.

According to the Entertainer Guidelines, the Plaintiffs were to charge a minimum of $20 for VIP dances.  Some Plaintiffs charged more than $20 for VIP dances and, according to the Defendant, no Plaintiff was ever disciplined for charging less than $20 for a VIP dance.  A Plaintiff's success as an exotic dancer was based, in large part, on her ability to entice interaction with her customers.

---

[1] In some cases the House Fee was carried over to the next shift.  The Plaintiffs were not required to pay the House Fee up front, and most Plaintiffs paid the House Fee over the course of the evening.

[2] Plaintiffs who checked in before 11 a.m. paid no House Fee.  Plaintiffs who checked in between 11 a.m. and 6 p.m. paid a $10 House Fee.  Plaintiffs who checked in between 6 p.m. and 9 p.m. paid a $20 House Fee.  Plaintiffs who checked in between 9 p.m. and 11 p.m. paid a $30 House Fee.

### III.  DISCUSSION

The Plaintiffs filed this collective action lawsuit alleging that the Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, by failing to pay them a minimum wage. The parties agree that the relevant inquiry is whether the Plaintiffs were employees or independent contractors.  This determination of a worker's status is a question of law.  *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1985).  "For purposes of social welfare legislation, such as the FLSA, 'employees are those who as a matter of economic reality are dependent upon the business to which they render service.'" *Id.* at 1534 (quoting *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 299 (5th Cir. 1975)).  To determine the parties' economic reality, the Seventh Circuit "do[es] not look to a particular isolated factor but to all the circumstances of the work activity." *Id.*  The six factors considered by courts in this circuit are:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; [and] (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id*. at 1535.

There is no analogous Seventh Circuit case law, and the only federal appellate court to examine the issue of whether exotic dancers are employees or independent contractors was the Fifth Circuit in *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324 (5th Cir. 1993).[3]  Like the

---

[3] In addition to the Fifth Circuit, numerous district courts have considered this issue.  *See, e.g.*, *Harrell v. Diamond A Entm't*, 992 F. Supp. 1343 (M.D. Fla. 1997); *Reich v. Priba Corp.*, 890 F. Supp. 586 (N.D. Tex. 1995); *Martin v. Priba Corp.*, Civ. A. No. 3:91-CV-2786-G, 1992 WL 486911 (N.D. Tex. Nov. 6, 1992); *Donovan v. Tavern Talent & Placements, Inc.*, No. 84-F-401, 1986 WL 32746 (D. Colo. Jan. 8, 1986).  In all of these cases the district courts ruled that

Plaintiffs in the instant litigation, the exotic dancers in *Circle C* claimed that they were employees, not independent contractors. After applying the Fifth Circuit's version of the economic realities test,[4] the court of appeals agreed.

### A.    The Defendant's control as to the manner in which the work is performed.

With respect to the control factor, the Fifth Circuit explained that the club "exercise[d] a great deal of control over the dancers." *Circle C*, 998 F.2d at 327. The dancers were "required to comply with weekly work schedules, which Circle C compile[d]." *Id*. Dancers who were tardy were fined. Circle C set the prices for table and couch dances. Although dancers could choose their own costumes and their own music, both the costume and the music had to meet standards set by Circle C. *Id.* Circle C also extensively controlled the dancers' conduct by promulgating rules including: "[N]o flat heels, no more than 15 minutes at one time in the dressing room, only one dancer in the restroom at a time, and all dancers must be 'on the floor' at opening time." *Id*. Dancers who violated the code of conduct were fined.

The Plaintiffs in the instant case are "subject to a broad range of control by Defendant when it comes to the manner in which their work is performed." Docket No. 57 at 8. When they are hired, the Plaintiffs receive and review a copy of the Entertainer Guidelines. These guidelines require that, among other things, the Plaintiffs: work at least a six hour shift; charge at

---

the dancers were employees and thus were entitled to a minimum wage.

[4] Unlike the Seventh Circuit, which considers six factors, the Fifth Circuit's version of the economic realities test considers only five factors: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Circle C*, 998 F.2d at 327. However, the court is of the opinion that the tests applied by the Fifth and Seventh Circuits are essentially identical.

least $20 for all VIP dances; refrain from inviting significant others or family members to the club while the Plaintiffs are working; and avoid walking with a lit cigarette, chewing gum, drinking anything from a bottle, or having a cell phone on the club floor.  Docket No. 58 Ex. 3 ¶¶ 9-10, 12, 15.  Another version of the Entertainer Guidelines prohibits the Plaintiffs from frequenting the club on days when they are not working.  *See* Docket No. 58 Ex. 6 ¶ 13.

       The Defendant claims that the Entertainer Guidelines were "of no real import," Docket No. 64 at 12, because there was no written record of violations.  Docket No. 65 Ex. 2 at 27, lines 18-20.  Further, certain violations such as chewing gum on the floor were not punished.  *Id*. at 36, lines 3-10.  In addition, the Defendant argues that some of the Entertainer Guidelines were included "to ensure that the Entertainers' behavior conformed with the law and to keep both the patrons and Entertainers safe."  Docket No. 64 at 15.  Finally, the Defendant asserts that *Circle C* is distinguishable because the Plaintiffs in this case were free to work on the dates and times that they chose and thus they largely set their own schedules.

       Despite the Defendant's arguments otherwise, this case is analogous to *Circle C*.  The Defendant in the instant case regulated the Plaintiffs' behavior with a written code of conduct.  Although the Defendant claims that the rules in the Entertainer Guidelines were never enforced, there is nothing in the record indicating that anyone informed the Plaintiffs of this fact.  The Defendant cannot claim that it did not impose a significant amount of control on the Plaintiffs by arguing, with absolutely no evidentiary support, that the rules did not actually apply.  While it is true that the Plaintiffs in the instant case could set their own work schedules, once at the club, the Defendant asked the Plaintiffs to work for a certain amount of time.  The Plaintiffs could request music, but the music was ultimately controlled by the Defendant.  *See* Docket No. 58 Ex.

5 at 46, lines 8-14.  The Plaintiffs could pick their own costumes; however, as in *Circle C*, the Defendant had ultimate veto power.  *See id*. 46-47.  Further, the Defendant prohibited the Plaintiffs from being at the club in their free time and also prohibited the Plaintiffs' families and significant others from coming to the club while the Plaintiffs were working.  Docket No. 58 Ex. 6 ¶¶ 13, 16.  Finally, the Defendant's argument that many of the rules were imposed to protect the Plaintiffs and to ensure compliance with the law is unavailing.  *See Circle C*, 998 F.2d at 327 (rejecting Circle C's attempt to downplay its control).  In short, all of the parties' admissible evidence indicates that the Defendant exerted a significant amount of control over the Plaintiffs.  Thus, although the Defendant exercises less control than the club in *Circle C*, the Defendant's conduct still indicates that the Plaintiffs were employees.

      **B.**      **The Plaintiffs' opportunity for profit or loss.**

As to the opportunity for profit and loss, in *Circle C* the Fifth Circuit noted that although a dancer's "initiative, hustle, and costume significantly contribute to the amount of her tips," *Circle C*, 998 F.2d at 328, the dancers were not responsible for drawing customers to the club in the first place.  "Circle C is responsible for advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of beverages and food."  *Id*.  The court concluded that "[g]iven its control over determinants of customer volume, Circle C exercises and high degree of control over a dancer's opportunity for 'profit.'"  *Id*.  Therefore, "[t]he dancers are 'far more akin to wage earners toiling for a living, than to independent entrepreneurs seeking a return on their risky capital investments.'"  *Id*. (quoting *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1051 (5th Cir. 1987)).

In the instant case, a Plaintiff's only "opportunity for loss comes in the form of a 'House

7

Fee' that she is required to pay for each shift, the amount of which ranges from $0.00 - $30.00." Docket No. 57 at 12. "All other potential risks of loss, be they food and beverage related or liability-related, are borne solely by Defendant." *Id.* at 13. Similarly, an entertainer has no real opportunity to profit. At best she can "increase her earnings by taking care of herself, working harder, and enticing social interaction with her customers." *Id.* The Defendant tacitly acknowledges that this was one way in which the Plaintiffs could enhance their profits. However, the Defendant refuses to acknowledge that this argument has been rejected by every court that has considered it. *See, e.g.*, *Harrell*, 992 F. Supp. at 1350; *Priba Corp.*, 890 F. Supp. at 593. The Defendant also emphasizes that the Plaintiffs were allowed to advertise and market themselves by using MySpace, Facebook, and simple word of mouth. Docket No. 64 at 17. This may be true, but the simple fact remains that, like the club in *Circle C*, the Defendant is primarily responsible for drawing customers into the club. *See Circle C*, 998 F.2d at 328. Thus, the second factor also tips in favor of employee status.

  **C.** **The Plaintiffs' investment in equipment or materials.**

  In *Circle C*, the Fifth Circuit noted that "a dancer's investment is limited to her costumes and a padlock." *Circle C*, 998 F.2d at 327. Although the court acknowledged that some dancers spend a significant amount of money on their costumes, the court concluded that "[a] dancer's investment in costumes and a padlock is relatively minor to the considerable investment Circle C has in operating a nightclub." *Id.* at 328; *see also Harrell*, 992 F. Supp. at 1350. "Circle C owns the liquor license, owns the inventory of beverages and refreshments, leases fixtures for the nightclub . . . owns sound equipment and music, maintains and renovates the facilities, and advertises extensively." *Circle C*, 998 F.2d at 327. Thus, this factor indicated that the dancers

were employees.

The instant case is markedly similar to *Circle C*. The Plaintiffs "do not make any capital investment in Defendant's facilities, advertising, maintenance, security, staff, sound system and lights, food, beverage, and other inventory." Docket No. 57 at 14. The Plaintiffs' only investment is in their costumes and their general appearance (i.e. hair, makeup, and nails). *Id*. at 15. Thus, as in *Circle C*, this factor tips in favor of employee status.

### D. Special skills required.

The Fifth Circuit concluded that the dancers in *Circle C* "do not need long training or highly developed skills to dance at a Circle C nightclub." 998 F.2d at 328. Indeed, many of Circle C's dancers had never before worked at a topless dance club. *Id.* Other courts have consistently held that little skill is necessary to be a topless dancer. *See, e.g.*, *Harrell*, 992 F. Supp. at 1351; *Priba Corp.*, 890 F. Supp. at 593; *Jeffcoat v. Alaska Dept. of Labor*, 732 P.2d 1073, 1077 (Alaska 1987) (applying federal courts' economic realities analysis).

In the instant case, the Defendant claims that although the entertainers are not trained dancers, they must possess special skills "in communicating, listening, and (to some minor extent) counseling" in order to be successful. Docket No. 64 at 21. According to the Defendant,

> an Entertainer must be a peculiar combination of a customer service representative and counselor: she must have excellent listening skills, the ability to read another person's affect and discern from that demeanor his particular conversational or emotional needs, and the ability and willingness to fulfill those needs in a purely non-sexual way.

*Id.* at 21-22. This argument is unconvincing, especially because nothing in the record indicates that the Defendant's hiring process included an assessment of a prospective dancer's communication or counseling skills. Having examined all of the parties' admissible evidence,

the Court is convinced that this factor indicates that the Plaintiffs are employees.

    **E.**   **The degree of permanency of the working relationship.**

   The *Circle C* court noted that "most dancers have short-term relationships with Circle C." *Circle C*, 998 F.2d at 328. "Although not determinative, the impermanent relationship between the dancers and Circle C indicates non-employee status." *Id.* However, the court concluded that "[t]he transient nature of the work force is not enough here to remove the dancers from the protections of the FLSA." *Id*. at 328-29. Thus, despite the fact that this factor tipped in favor of independent contractor status, the court was convinced that the economic realities of the relationship indicated that the dancers were employees. *Id*. at 329.

   In the case presently before this Court, the Plaintiffs argue that the Defendant considered the relationship between the parties to be ongoing. *See* Docket No. 57 at 16-17. Thus, according to the Plaintiffs, their situation is materially different "from the limited-duration relationship typical to independent contractors." *Id*. at 17. However, the Defendant submitted admissible evidence indicating that most of the dancers only worked at the Defendant's club for six months. Docket No. 65 Ex. 6 ¶ 3. Thus, as in *Circle C*, this factor tips in favor of independent contractor status.

    **F.**   **The extent to which the Plaintiffs' service is integral to the Defendant's business.**

   The Fifth Circuit does not include this factor in its economic realities analysis. However, other district courts have considered this issue and have concluded that "[e]xotic dancers are obviously essential to the success of a topless nightclub." *Harrell*, 992 F. Supp. at 1352; *see also Jeffcoat*, 732 P.2d at 1077. Although the Defendant claims that no more than ten percent of its profits came from the dancers, and thus, "the Entertainers are not a vital part of its business,"

Docket No. 64 at 24, this assertion is belied by the Defendant's own deposition testimony. Manager James Nicholson stated that "[p]robably less than one percent" of the club's customers go to the club solely for food and drink.  Docket No. 58 Ex. 1 at 27, line 20.  When asked what would happen "if the club limited the use of dancers at the facility," Nicholson stated: "The same thing if McDonald's got rid of hamburgers, all right? We wouldn't be that business."  *Id*. at 27, lines 21-25; *id.* at 28, line 1.

The Defendant's argument that the dancers are non-essential forms of extra entertainment, "like televisions at a sports bar" is simply unconvincing.  Robert W. Wood, *Pole Dancers: Employees or Contractors?* TAX NOTES, Nov. 9, 2009, at 673, 675.  Indeed, the Defendant's own manager apparently does not believe this assertion.  The Plaintiffs are critical to the Defendant's current business model.  Thus, this factor indicates that the Plaintiffs are employees, and not independent contractors.

Having considered all of the parties' admissible evidence and viewing the evidence in the light most favorable to the Defendant, the *Lauritzen* factors indicate that the Plaintiffs are employees.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Summary Judgment (Docket No. 56) is **GRANTED**, the Defendant's Motion for Summary Judgment (Docket No. 63) is **DENIED**, and the Defendant's Motion for Oral Argument (Docket No. 66) is **DENIED**.

SO ORDERED:   06/04/2010

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

11

Copies to:

Rebecca Lynn Brettin
Gibbons Jones P.C.
rbrettin@gibbonsjones.com

Philip J. Gibbons Jr.
Gibbons Jones P.C.
pgibbons@gibbonsjones.com

Dorothy Ann Hertzel
Gilroy Kammen & Hill
doriehertzel@gmail.com

Andrew G. Jones
Gibbons Jones P.C.
ajones@gibbonsjones.com

Richard Kammen
Gilroy Kammen & Hill
rkamm@iquest.net